**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
THE INTERCEPT MEDIA, INC.,

        Plaintiff,

        v.

OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC and MICROSOFT CORPORATION,

        Defendants.

------------------------------------------------------- X

Case No. 1:24-cv-01515-JSR

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, AND OPENAI HOLDINGS, LLC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 1
    A. Plaintiff Lacks Article III Standing ............................................................................ 1
        1. Plaintiff has not alleged a particularized injury. ...................................... 1
        2. Plaintiff has not alleged a concrete injury ............................................... 2
    B. Plaintiff Fails To State a Claim Under Section 1202(b) ........................................ 5
        1. Plaintiff has not alleged "injury" as required by Section 1203(a). ............. 5
        2. Plaintiff fails to specify the works at issue. .............................................. 6
        3. Plaintiff has not adequately pled scienter. ............................................... 6
        4. Plaintiff fails to state a 1202(b)(3) claim. ................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aaberg v. Francesca's Collections, Inc.*,
  No. 17-CV-115 (AJN), 2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ...................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 8

*Devaney v. Chester*,
  813 F.2d 566 (2d Cir. 1987) ..................................................................................................... 7

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................................. 1, 2

*Doe 1 v. GitHub, Inc.*,
  No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ........................................ 9

*Gilliam v. Am. Broad. Cos., Inc.*,
  538 F.2d 14 (2d Cir. 1976) ................................................................................................... 4, 5

*Hirsch v. CBS Broadcasting Inc.*,
  No. 17 CIV. 1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) .................................. 7

*Holmes v. Comm'r of Internal Revenue*,
  99 F.2d 822 (2d Cir. 1938) ....................................................................................................... 9

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*,
  81 F. Supp. 2d 70 (D.D.C. 2000) ............................................................................................. 5

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999), *rev'd in part on other grounds*, 336
  F.3d 811 (9th Cir. 2003) ........................................................................................................... 9

*Lamothe v. Atl. Recording Corp.*,
  847 F.2d 1403 (9th Cir. 1988) .................................................................................................. 4

*Macia v. Microsoft Corp.*,
  152 F. Supp. 2d 535 (D. Vt. 2001) ..................................................................................... 4, 11

*Masson v. New Yorker Mag., Inc.*,
  501 U.S. 496 (1991) .................................................................................................................. 4

*Nat. Res. Def. Council, Inc. v. U.S. Dept. of the Interior*,
  478 F. Supp. 3d 469 (S.D.N.Y. 2020) ....................................................................................... 6

*Nunes v. Rushton*,
  299 F. Supp. 3d 1216 (D. Utah 2018) ...........................................................................................5

*Olusola v. Don Coqui Holding Co., LLC*,
  No. 19-cv-6909 (MKB) (JO), 2021 WL 631031 (S.D.N.Y. Feb. 18, 2021) ..............................3

*Petrone v. Turner Publ'n Co. LLC*,
  No. 22-cv-2698 (AS), 2023 WL 7302447 (S.D.N.Y. Nov. 6, 2023) ..........................................4

*Reilly v. Commerce*,
  No. 15-cv-05118 (PAE) (BCM), 2016 WL 6837895 (S.D.N.Y. Oct. 31, 2016) .......................4

*Roberts v. BroadwayHD LLC*,
  518 F. Supp. 3d 719 (S.D.N.Y 2021) .......................................................................................10

*Sims v. Blanchris, Inc.*,
  648 F. Supp. 480 (S.D.N.Y. 1986) .............................................................................................4

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................................................................1

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................................................2, 3, 4, 5

*Tremblay v. OpenAI, Inc.*,
  No. 23-cv-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ....................................10

*We the Protesters, Inc. v. Sinyangwe*,
  No. 22 CIV. 9565 (JPC), 2024 WL 1195417 (S.D.N.Y. Mar. 20, 2024) .................................10

**Statutes**

17 U.S.C. § 1202 ............................................................................................................... *passim*

17 U.S.C. § 1203 .........................................................................................................................5, 6, 9

**Other Authorities**

H. Rep. No. 105-551 (1998) ..............................................................................................................3

H. Rep. No. 105-796 (1998) ..............................................................................................................3

Jane C. Ginsburg, *The Right to Claim Authorship in U.S. Copyright and Trademarks Law*, 41 Houston L. Rev. 263, 283-85 (2004) ........................................................4

Restatement (2d) of Torts § 624 ........................................................................................................5

Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech.
  L. Rev. 97, 146 (2012) ...............................................................................................................4

S. Rep. No. 105-190 (1998) .......................................................................................................3

**I.      INTRODUCTION**

Plaintiff still has not explained what, exactly, it is alleging against OpenAI.  Nowhere in its 25-page opposition brief (nor its Complaint) has Plaintiff identified a single work from which OpenAI supposedly removed copyright management information.  Nor does Plaintiff offer an example of a ChatGPT output that looks anything like one of Plaintiff's articles.  And Plaintiff says nothing about the mysterious "approximations" of OpenAI's training datasets upon which Plaintiff rests its claims.  Accordingly, and for the reasons that follow, Plaintiff does not have standing to bring this lawsuit, let alone state any claim for which relief can be granted.

**II.     ARGUMENT**

   **A.      Plaintiff Lacks Article III Standing**

   **1.      Plaintiff has not alleged a particularized injury.**

Plaintiff concedes that an injury "must affect the plaintiff in a personal and individual way" to confer Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).  But it has not shown that OpenAI's alleged conduct has affected *Plaintiff*.  Instead, the complaint asserts that ChatGPT "regurgitate[s]" or "mimic[s] significant amounts of material from copyright-protected works of journalism" (but not *Plaintiff's* works of journalism); that ChatGPT "generally does not provide the author, title, copyright notice, or terms of use information applicable to the works on which its responses are based" (but not to *Plaintiff's* works); and that ChatGPT produces responses "frequently based on copyrighted works of journalism" (but not *Plaintiff's* copyrighted works of journalism).  (Compl. ¶¶ 35, 36, 40, 41.)

*Doe 1 v. GitHub, Inc.* shows why this is not enough.  Regarding standing for damages, *Doe 1* is on all fours with this case.  Contrary to Plaintiff's characterization, it did not matter in that case that the plaintiffs had framed their injury as a "violation of their licenses."  (Opp. at 9.)

1

Rather, the court rejected standing because plaintiffs did not allege that *they*, personally, had suffered any injury. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 850 (N.D. Cal. 2023). This was because "while Plaintiffs identif[ied] several instances in which [the AI model]'s output matched licensed code written by [another] Github user, none of these instances involve[d] licensed code published . . . by Plaintiffs." *Id.* (citation omitted). The same is true here—Plaintiff fails to identify any work published by *Plaintiff* that provides the basis for a Section 1202 claim.[1]

### 2. Plaintiff has not alleged a concrete injury.

In its opposition, Plaintiff argues that it is has standing because it has alleged a "concrete" injury under *TransUnion v. Ramirez*. But the Supreme Court in that case *rejected* a strikingly similar allegation of harm. There, plaintiffs also brought a claim based on the alleged presence of data in a nonpublic dataset, in a condition that they claimed violated federal law. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418–19 (2021). Specifically, in *TransUnion*, the dataset contained false information. But the Court held that only the plaintiffs whose false information was *disseminated* to third parties had suffered a concrete harm. *Id.* at 432. Plaintiff cannot distinguish these facts, so it instead spends the bulk of its opposition giving a history lesson. But Plaintiff cannot avoid the conclusion that "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *Id.* at 434.

### a. Because Section 1202(b) is about attribution, Plaintiff cannot analogize its injury to a property-related harm.

To determine whether Plaintiff's alleged harm is "concrete," this Court must evaluate whether Plaintiff has identified "a close historical or common-law analogue for [its] asserted

---

[1] As to injunctive relief, the court in *Doe 1* found that those plaintiffs pled a "sufficiently imminent and substantial" risk of a future Section 1202 violation because they alleged that the AI model was trained on public GitHub code repositories in which plaintiffs' code resided, and that the AI model purportedly outputted verbatim code from those repositories 1% of the time. *Id.* at 851. Here, Plaintiff does not and cannot make any similar allegations.

2

injury." *TransUnion*, 594 U.S. at 424.  Plaintiff argues that it has done so because OpenAI allegedly infringed its right to "exclude others from using [its] property," which it claims is good enough for standing in a copyright infringement case.  (Opp. at 7.)  Plaintiff, however, does not bring a copyright infringement claim; Plaintiff brings Section 1202 claims.  While those two claims may share "similar remedies," (Opp. at 6), they protect different rights.  Copyright claims are about copying.  But Section 1202 claims are about *attribution* rights, not property rights.

Section 1202's legislative history discusses this connection to attribution-related harms.  When Congress drafted Section 1202, it expressly intended that provision to assist in "indicating attribution, creation, and ownership."  S. Rep. No. 105-190, at 16 (1998).  In fact, Congress passed Section 1202 in part to implement the United States' obligations under international copyright treaties that require signatories to protect the right of attribution.  *See* H. Rep. No. 105-796, at 64 (1998) (Section 1202 was drafted to comply with treaty provisions "requiring contracting parties to protect the integrity of copyright management information . . . which identifies the work, the author of the work, [or] the owner of any right in the work").  Congress further explained that Section 1202 "protect[s] consumers from misinformation."  H. Rep. No. 105-551, at 10-11 (1998).  This risk of misinformation results from interference with attribution, rather than from interference with the right to exclude others from property.  In opposition, Plaintiff notes that "Congress's view on the matter is entitled to considerable weight."  (Opp. at 6 (citing *Spokeo*, 578 U.S. at 341).)  Here, Congress's view is that Section 1202 seeks to redress attribution- and misinformation-related harms.

Further, courts have consistently viewed Section 1202 as addressing attribution-related harms.  *See, e.g.*, *Olusola v. Don Coqui Holding Co., LLC*, No. 19-cv-6909 (MKB) (JO), 2021 WL 631031, at *5 (S.D.N.Y. Feb. 18, 2021) ("Defendant deprived Plaintiff of his right to attribution . . . by removing Plaintiff's CMI"); *Reilly v. Commerce*, No. 15-cv-05118 (PAE)

3

(BCM), 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) ("Defendant's removal of her copyright notice and other CMI deprived her of professional recognition."). And much ink has been spilled in the pages of law reviews about Section 1202's connection to attribution rights. *See, e.g.*, Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 Colum. Sci. & Tech. L. Rev. 97, 146 (2012) (the DMCA's "CMI protections [are] analogous to a limited right of integrity or attribution"); Jane C. Ginsburg, *The Right to Claim Authorship in U.S. Copyright and Trademarks Law*, 41 Houston L. Rev. 263, 283-85 (2004) (Section 1202 "may contain the seeds of a general attribution right"). Accordingly, Plaintiff's alleged injury is a harm to its attribution right, rather than to its right to exclude others from its property.

### b. A "close historical or common-law analogue" for an attribution-related harm would require dissemination.

While an analogy to a property-related injury is inapt, courts have recognized a connection between attribution-related harms and various other common law torts. *See, e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511-12 (1991) (defamation); *Petrone v. Turner Publ'n Co. LLC*, No. 22-cv-2698 (AS), 2023 WL 7302447, at *4 (S.D.N.Y. Nov. 6, 2023) (false light); *Gilliam v. Am. Broad. Cos., Inc.*, 538 F.2d 14, 24 (2d Cir. 1976) (unfair competition); *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988) ("passing off"); *Sims v. Blanchris, Inc.*, 648 F. Supp. 480, 482 (S.D.N.Y. 1986) ("reverse passing off"); *Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 541 (D. Vt. 2001) (slander of title). Importantly, each of these torts requires dissemination to a third party.[2] *See, e.g.*, *TransUnion*, 594 U.S. at 434

---

[2] Plaintiff briefly argues that it has alleged dissemination because "Microsoft and OpenAI distributed the works to each other." (Opp. at 8.) But the Supreme Court rejected a similar argument in *TransUnion* that the defendant had "'published' the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent" mailers. *TransUnion*, 594 U.S. at 434 n.6. The Court explained that "American courts [do] not traditionally recognize intra-company disclosures as actionable publications." *Id.*

(publication is "essential to liability" for defamation); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1235 (D. Utah 2018) (a false light claim "requires publication"); *Gilliam*, 538 F.2d at 24 (tort of unfair competition vindicates "the author's personal right to prevent the presentation of his work *to the public* in a distorted form" (emphasis added)); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74 (D.D.C. 2000) ("If A claims that B is selling B's products and representing *to the public* that they are A's, that is passing off." (emphasis added)); Restatement (2d) of Torts § 624 (slander of title relates to the "*publication* of a false statement disparaging another's property rights" (emphasis added)).[3]

Accordingly, just as a "letter that is not sent does not harm anyone," *TransUnion*, 594 U.S. at 434, neither does the allegedly missing CMI in an internal database harm anyone without an allegation that ChatGPT has outputted Plaintiff's works to users in the real world—an allegation Plaintiff has not made. Because Plaintiff has not alleged a concrete injury, this Court should dismiss the complaint for lack of standing.

### B. Plaintiff Fails To State a Claim Under Section 1202(b)

#### 1. Plaintiff has not alleged "injury" as required by Section 1203(a).

Section 1202 claims may be brought only by a plaintiff that has been "injured" by the alleged statutory violation. 17 U.S.C. § 1203(a). Plaintiff argues that there is "no reason to believe that 'injury' under section 1203(a) means anything different than it does under Article III." (Opp. at 11.) But the "canon against surplusage favors giving full effect to all of a statute's provisions so that no part will be inoperative or superfluous, void or insignificant." *Nat. Res. Def. Council, Inc. v. U.S. Dept. of the Interior*, 478 F. Supp. 3d 469, 484 (S.D.N.Y. 2020)

---

Plaintiff thus cannot square its dissemination argument with its allegations about the "close working relationship between Microsoft and OpenAI." (*See, e.g.*, Opp. at 17, 24.)

[3] The tort of "slander of title" also shows that Plaintiff is wrong to suggest that if a tort involves property rights, "interference . . .without more, [is] a concrete injury." (Opp. at 7.)

(cleaned up). Section 1203(a) would mean nothing if a statutory violation, without more, was as an "injury." As explained in OpenAI's opening brief, Plaintiff has not alleged how it was injured by the presence of CMI-less copies in OpenAI's internal datasets. (*See* Mot. at 9–10.) Accordingly, Plaintiff has not shown that it has statutory standing.

### 2. Plaintiff fails to specify the works at issue.

Plaintiff does not dispute that it must plausibly allege the works at issue. (Opp. at 13-14.) Instead, it improperly shifts the burden to OpenAI. It claims that it "cannot name all its works contained in Defendants' training sets only because Defendants have kept them secret." (Opp. at 14.) This argument—which relies on no authority—fails. If Plaintiff knows enough to plausibly allege that OpenAI removed CMI from its works (as Plaintiff claims to do), then it must know enough to plausibly allege which works OpenAI removed CMI from. (Compl. ¶ 38.; Opp. at 16-17.) Indeed, Plaintiff's claims rely almost exclusively on alleged "public approximations of the ChatGPT training sets" that supposedly contain "[t]housands of Plaintiff's works" without CMI. (Opp. at 16-17; *see also id.* at 19.) Setting aside that Plaintiff has not provided any details about these alleged "approximations," if Plaintiff can rely on the "approximations" to allege removal of CMI from specific works, it should also be able to rely on them to *identify* those works. Plaintiff has not done so.[4]

### 3. Plaintiff has not adequately pled scienter.

There is no doubt that Plaintiff must plead Section 1202(b)'s "double-scienter" requirements. (Opp. at 18.) The dispute instead centers on two issues. First, whether

---

[4] Plaintiff makes a belated effort to cure this deficiency by pointing to a "published [] list of the top 1,000 domains present in WebText and their frequency." Opp. at 14. But Plaintiff did not plead this fact in its Complaint, and it is "axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Stillman v. Townsend*, No. 05-cv-6612 (WHP), 2006 WL 2067035, at *3 (S.D.N.Y. July 26, 2006).

conclusory assertions, without more, are sufficient to plead OpenAI's "double scienter." (*Id.* at 19 ("This itself is enough").) And second, whether Plaintiff has pled any facts beyond those conclusory allegations to satisfy the "double scienter" requirement. (*Id.* at 19-23.)

### a. Pleading scienter requires more than conclusory assertions.

Plaintiff suggests that because "courts should be lenient in allowing scienter issues to survive motions to dismiss," it need not plead *any facts at all* regarding scienter. (Opp. at 18) But the cases that Plaintiff cites do not stand for the proposition that a threadbare recitation of the elements is enough. In *Aaberg v. Francesca's Collections, Inc.*, plaintiffs alleged that they issued a cease-and-desist letter to the defendant, who continued to sell infringing products anyway. No. 17-CV-115 (AJN), 2018 WL 1583037, at *9 (S.D.N.Y. Mar. 27, 2018). The court expressly relied on the alleged facts of the cease-and-desist letter and the continued sales to find that plaintiffs had adequately pled scienter. *Id.* Similarly, in *Hirsch v. CBS Broadcasting Inc.*, the court reviewed a particular use of plaintiff's work—an appearance of plaintiff's photo in an episode of *48 Hours*—that revealed "a cropping out of [a] gutter credit from the Photo." No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017). The court explained that it could "fairly infer[]" scienter at the pleading stage because "the amount of material cropped out was minimal, and within it, [plaintiff's] photo credit was prominent." *Id.*

Here, by contrast, Plaintiff alleges no such cease-and-desist letter or any particular use of Plaintiff's work that gives rise to an inference about OpenAI's state of mind. Indeed, Plaintiff alleges no facts at all about the works from which OpenAI supposedly removed CMI. It is therefore not "enough" for Plaintiff to make conclusory allegations in the absence of plausible factual allegations like those in *Aaberg* and *Hirsch*. (Opp. at 19, 21); *see also Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (plaintiffs must "provide at least a minimal factual basis for their conclusory allegations of scienter").

### b. Plaintiff Does Not Plead Sufficient Facts Beyond Its Conclusory Assertions.

Plaintiff has not plausibly alleged either prong of the double scienter requirement.

First, as to Section 1202(b)'s "intent to remove CMI" requirement, Plaintiff relies on the unknown contents of unidentified "approximations of ChatGPT's training data." (Opp. at 19.) In Plaintiff's telling, because these unidentified "approximations" show that "the ChatGPT training data lacks CMI," it is plausible that OpenAI intentionally removed any missing CMI. (*Id.*) Yet, Plaintiff offers no details about the "approximations"—who created them, where they can be found, or whether they contain the information Plaintiff says they do. (Compl. ¶ 38.) At most, this allegation is merely consistent with, but does not plausibly suggest, a Section 1202 violation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (plaintiff must plead "allegations plausibly suggesting (not merely consistent with)" the alleged wrongful conduct).

Second, Plaintiff fails to allege that OpenAI removed CMI from Plaintiff's works with reason to know that doing so would induce, enable, facilitate, or conceal an infringement. 17 U.S.C. § 1202(b). Plaintiff does not contest that it must allege "some identifiable connection between the defendant's actions and infringement or likelihood of infringement." (Mot. at 14 (citing *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1325 (11th Cir. 2022).) Instead, Plaintiff points only to "a study conducted by Copyleaks." (Opp. at 21.) But this third-party study does not even say what Plaintiff claims it does. For example, the study showed that the frequency with which GPT-3.5 output reproduced content verbatim ranged dramatically by subject: in social sciences the study found that GPT-3.5 would on average reproduce just 21 words of a 412-word essay. However, journalism or news-related content was not among the 26 different subjects that the study analyzed. In other words, the Copyleaks study is not relevant to Plaintiff's content at all—at best, Plaintiff has alleged only that some limited regurgitation,

8

wholly outside of the news-related context, has been known to occur. This is a far cry from an allegation that OpenAI had reason to know that allegedly removing CMI would induce, enable, facilitate, or conceal any regurgitation, much less regurgitation of Plaintiff's content, or even any news-related content at all.[5] *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) (no Section 1202 liability where search engine "crawler did not include [CMI] when it indexed the images," even when the CMI-less images appeared in the index).

### 4. Plaintiff fails to state a 1202(b)(3) claim.

Finally, Plaintiff has not plausibly alleged distribution of CMI-less works. Setting aside that Plaintiff cannot plausibly allege *distribution* of CMI-less works without first plausibly alleging *removal* of CMI from those works, Plaintiff's claim fails for three additional reasons.

First, Plaintiff alleges no facts to plausibly suggest its works have been distributed by OpenAI. Plaintiff rests its Section 1203(b) claim on a single conclusory allegation that OpenAI distributed its training data to Microsoft. (Opp. at 24.) But its sole support for that allegation is that Microsoft is an investor in OpenAI and provides "the data center and supercomputing infrastructure" to OpenAI. (Compl. ¶¶ 20-21.) Neither fact suggests that OpenAI shared its training data with Microsoft. (Opp. at 24.); *see e.g.*, *Holmes v. Comm'r of Internal Revenue*, 99 F.2d 822, 824 (2d Cir. 1938) (ownership insufficient to suggest management of corporation).

Second, for the reasons explained in OpenAI's opening brief, Plaintiff fails to allege that OpenAI distributed *identical* copies of Plaintiff's work with CMI removed. *See Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *8 (N.D. Cal. Jan. 22, 2024) ( "Section

---

[5] In any event, Plaintiff also fails to plausibly allege why any such regurgitation would not be a fair use, which is not an infringement of copyright and accordingly cannot support Section 1202(b) liability.

1202(b) claims require that copies be 'identical'"); *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-AMO, 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024) ("Under the plain language of the statute, liability requires distributing 'original works' or 'copies of the works.'" (quoting 17 U.S.C. § 1202(b)(3))); (*see also* Mot. at 16–17 (citing cases).)

In arguing that identicality is not required, Plaintiff mischaracterizes *We the Protesters, Inc. v. Sinyangwe*, No. 22 CIV. 9565 (JPC), 2024 WL 1195417, at *10 (S.D.N.Y. Mar. 20, 2024). There, the court found no Section 1202 liability where a "modified [work] was distinct from" an original work, even when the defendant made only "minor modifications" to it. *Id.* at *9. The court then went on to explain that the complaint *also* alleged the existence of a "more similar or even identical version" of the work *before* the defendant made its "minor modifications." *Id.* As to that work only, the court found that plaintiffs' "allegations allow for the inference that the two [works] were at least close to identical." *Id.* at *9-10. In other words, the court applied essentially the same standard that OpenAI advocates for here.

Third, Plaintiff fails to allege scienter. Plaintiff argues that OpenAI had reason to know that its alleged distribution of training data to Microsoft would somehow conceal OpenAI's *own* alleged infringement. (Opp. at 25.) But Plaintiff does not explain, let alone plausibly allege, why sharing CMI-less, internal training data with Microsoft—OpenAI's partner in a "close business relationship," according to Plaintiff (Opp. at 17)—would conceal anything.[6] Indeed, the "point of CMI" is to provide information to "the public." *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y 2021) (emphasis added). Plaintiff has made no connection between sharing data with *Microsoft* and concealing infringement from *the public*. The failure to allege scienter is separately fatal to Plaintiff's Section 1202(b)(3) claim.

---

[6] To the contrary, Plaintiff alleges that Microsoft *knew* that the training data was supposedly infringing. (*See* Compl. ¶¶ 44–46.)

Dated: May 16, 2024                    MORRISON & FOERSTER LLP

By: /s/ *Joseph C. Gratz*
Joseph C. Gratz (*pro hac vice*)
JGratz@mofo.com
Vera Ranieri (*pro hac vice*)
VRanieri@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

Allyson R. Bennett (*pro hac vice*)
abennett@mofo.com
Rose S. Lee (*pro hac vice*)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone:  213.892.5200
Facsimile:  213.892.5454

Eric Nikolaides
enikolaides@mofo.com
250 W. 55th Street
New York, NY 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC

11

LATHAM & WATKINS LLP

By: /s/ *Joseph R. Wetzel*
Joseph R. Wetzel
joseph.wetzel@lw.com
Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman
alli.stillman@lw.com
Luke A. Budiardjo
luke.budiardjo@lw.com
Yijun Zhong
elaine.zhong@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, and OPENAI
HOLDINGS, LLC

12

KEKER, VAN NEST & PETERS LLP

By: /s/ *Paven Malhotra*
Robert A. Van Nest (*pro hac vice*)
rvannest@keker.com
R. James Slaughter (*pro hac vice*)
rslaughter@keker.com
Paven Malhotra
pmalhotra@keker.com
Michelle Ybarra (*pro hac vice*)
mybarra@keker.com
Nicholas S. Goldberg (*pro hac vice*)
ngoldberg@keker.com
Thomas E. Gorman (*pro hac vice*)
tgorman@keker.com
Katie Lynn Joyce (*pro hac vice*)
kjoyce@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415.391.5400
Facsimile: 415.397.7188

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC